69 So.2d 477

## BURTON v. STATE.

### 5 Div. 421.

Court of Appeals of Alabama.

Jan. 5, 1954.

Glenn Curlee, Wetumpka, and W. Carvel Woodall, Tallassee, for appellant.

Si Garrett, Atty. Gen., Robt. Straub, Asst. Atty. Gen., and Owen Bridges, Montevallo, of counsel, for the State.

CARR, Presiding Judge.

This is an appeal from a judgment of conviction for the offense of assault with intent to murder. The person assaulted was Howard Woodfin.

When the case was called for trial the defendant's attorney presented a doctor's certificate which stipulated that the appellant was ill. Some doubt arose about the accuracy and merit of the claim. A forfeiture was taken on defendant's appearance bond and after several hours delay the accused was brought to court.

The trial judge stated the following for the record:

"Let the record show that the doctor who issued the certificate on behalf of the defendant, was interrogated by the Court and stated, in substance, that the ailment of the defendant was hemorrhoids, and that it was not of such a nature as would jeopardize his well-being or his life if he were put to trial, and further, that the ailment of hemorrhoids could be remedied by an operation a month from this time or a year from this time, and that that was the only disability or ailment of the defendant."

After the State had announced ready, appellant's attorney made the following statement:

"Now, if the Court please, we make the motion that this case be continued on the following grounds: That when the case was called this morning and after the doctor's certificate of Dr. Howard Weldon was presented to the Court and we desire that that certificate be made a part of this motion, that the Solicitor made a statement to the Court, in the presence of the jurors, the prospective jurors, the present venire, that, in substance, that the background of this case was such that a continuance should not be granted; that this defendant had asked for a continuance and that it was granted one time prior to this time due to the fact that he was sick and had a doctor's cer-

tificate and this is the hour of twenty minutes to four, and as Your Honor knows, we have been in and around Court here all day. There has been quite a bit of maneuvering and telephone calls that were made to doctors and the Sheriff was sent to Lee County Hospital in Opelika, Alabama, to apprehend the defendant at the hospital and bring him back to Wetumpka, Alabama, and that during the several hours that we have been in the Court Room much talk has been going on with reference to this case. Rumors that the defendant did not want to have his case tried. We feel that this defendant has been jeopardized and that he would not be able to obtain a fair trial by this present venire, the present propective jurors. We think that it would be extremely prejudicial to this defendant to force him to trial after the jurors have been in Court, present all day, and the maneuvering around and the rumors that have been going around that the defendant was trying to escape a trial. We don't think that we could get a fair trial if he is forced to trial at this term of Court."

It is not contended in brief of counsel that a continuance should have been allowed because the accused was too ill to stand trial, but it is urged that his rights were prejudiced by circumstances incident to this preliminary matter. This claim is indicated by the content of the above quoted statement of counsel.

It is extremely doubtful that this contention is properly presented for our review. The record does not contain any evidence or proof to support the position. The motion for a new trial includes this as one ground, but no evidence was taken at the hearing of the motion.

Be this as it may, we are clearly convinced that there is no merit in the matter.

The solicitor was not overzealous or unfair in pressing his petition. It developed that the defendant was able to stand trial

and he should have been in court. His failure to appear invited the procedure.

The trial judge saw and heard what transpired. Certainly there is no indication in the record that he abused his discretion in overruling the motion. Redwine v. State, 36 Ala.App. 560, 61 So.2d 715; 6 Alabama Digest, Criminal Law, ⬿ 586.

■ The accused had married the divorced wife of the injured party. It appears that considerable bad feeling had developed between the parties on account of circumstances incident to the custody of a little girl born of the first marriage.

On the day of the assault Mr. Woodfin had stopped at a country store. He was entering his automobile to leave when the appellant drove up. At this point there arises an irreconcilable conflict in the evidence.

According to the State's witnesses the appellant went to Mr. Woodfin's car and struck him with a blackjack or weapon of like kind or description. A fight ensued, during which Mr. Woodfin cut the appellant across the throat with a pocket knife. The latter went back to his automobile and secured a twelve-gauge, choke-bore shotgun, and as the former was retreating and had reached a distance where about 35 or 40 feet separated the two, the defendant shot Mr. Woodfin in the back.

The appellant denied that he first attacked Mr. Woodfin with a black jack or any other weapon. He claimed and testified that he went to the car to make some complaint about circumstances incident to the custody of the child. At this time Mr. Woodfin cut him as indicated. After some fighting and scuffling, the appellant went to his car and secured his gun, and as Mr. Woodfin was advancing on him with a garden rake he fired the shotgun one time. He estimated the distance between the two to be about fifteen feet.

From this thumbnail delineation of the evidence it clearly appears that we would be out of line with the authorities to disturb the verdict of the jury.

Over the general objections the court permitted Mr. Woodfin to answer questions relating to circumstances incident to the court proceedings in which the custody of his little girl was involved.

At the times the objections were made they came after the witness had answered the question. Fincher v. State, 211 Ala. 388, 100 So. 657; Turner v. State, 34 Ala. App. 456, 41 So.2d 301.

■ It was of course competent for the State to establish the nature and extent of the injuries to the assaulted party. Adams v. State, 33 Ala.App. 136, 31 So.2d 99; Berry v. State, 27 Ala.App. 507, 175 So. 407.

The attending physician testified that Mr. Woodfin was shot with birdshot which covered his back. Some were found in the left arm, more in his right arm, but the biggest portion centered over the right kidney. While the injured party was testifying, the solicitor had him to bare his back and arms and permit the jury to make observations.

■ Forthwith after the affray Mr. Woodfin was taken to a hospital. Soon after his arrival he was seen by Officer Venable. Over timely objections the court permitted the officer to state the number of shot holes he found in Mr. Woodfin's back by actual count.

The witness replied: "In his right arm and the back side of his arm there was thirty-two shot. I say there was thirty-two shot—there was thirty-two entries into the skin—little holes. Some of the shot was just under the skin and you could feel them and roll them under there. On his left arm there was six. In his back there was eighty-eight shot in his back and around the circle of the kidney and the small part of his back that was the thickest settled place where the charge of the load hit him."

The insistence is made that the officer was not present at the place of the shooting and it was not shown that there had not been changes in conditions relating to the injuries.

We doubt that this position is tenable. In any event the matter related to an inquiry that was not in dispute. The appellant admitted that he fired the shot. As we have indicated, the physician testified concerning the general locations of the wounds. The jury was given an opportunity to make a visual observation.

We certainly do not find any merit in this insistence. Brown v. State, 33 Ala.App. 152, 31 So.2d 652; Woodard v. State, 253 Ala. 259, 44 So.2d 241.

■ While a State witness, Mrs. Rowe, was testifying this occurred:

"Q. Do you work that (garden) yourself or does somebody else do it for you? A. Well—

"The Court: Mr. Curlee. I don't know what you are fishing for, but what she does in her garden hasn't got a thing to do with this case as far as I can see.

"Mr. Curlee: Well, I think that the Court—

"The Court: I think you are a little far afield.

"Mr. Curlee: We don't insist on it now, but later on I think that the Court will see that this is a very material question.

"The Court: If so, at the proper time I will be glad to admit it, but I think you are a little far afield at the present time.

"Mr. Woodall: We except, Your Honor.

"The Court: Yes, sir. You have an exception."

Counsel for appellant states in brief that he was "leading up to the question as to whether Mrs. Rowe, a witness for State, worked garden with a garden rake."

It is clearly shown that counsel abandoned the inquiry for the time. The court offered to allow an answer if and when the connection was established by the proof.

400

Prior to this place in the proceedings there was no evidence that the injured party had a rake when he was shot.

It was imposed on counsel to give the court some indication of his purpose in asking a question which certainly on its face was foreign to any factual issue which had developed up to that time. Terry v. State, 203 Ala. 99, 82 So. 113; Williams v. State, 245 Ala. 32, 15 So.2d 572.

We have responded to each question which is pressed in brief of counsel. Those we have omitted relate to matters which do not merit any discussion.

The judgment below is ordered affirmed.

Affirmed.